Lorenza Rosario, Plaintiff and Appellee, *v.* Santiago Ruiz López et ux., Defendants, and Valentín Polanco de Jesús, Defendant and Appellant.

No. 8670. Argued May 5, 1943.—Decided July 7, 1943.

*V. Polanco de Jesús, pro se.   Angel Rivera Colón* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

On March 4, 1931 Santiago Ruiz and his wife, owners of two farms hereinafter referred to as farms A and B, executed a mortgage in favor of Ventura Cortés and his wife, Lorenza Rosario, to secure a loan of $7,000 made by Cortés to Ruiz. The said loan was to be paid in annual instalments of $1,000, the final instalment being due on March 4, 1938, and interest thereon was to be paid at the rate of 12% annually during the term of the loan and after maturity and default, until final payment.   There was also provision for costs and at-

torney's fees of $520. When the community partnership of Cortés and his wife, Lorenza Rosario, was dissolved in 1937, this mortgage credit was adjudicated the sole property of the latter.

On May 5, 1942 Lorenza Rosario filed suit against Ruiz and his wife to collect the principal sum of $7,000 plus interest from January 1, 1937 to April 30, 1942 at the annual rate of 12%. She also prayed for recovery of $138.12 and $19.32, sums she had expended in redeeming farms A and B after tax sales thereof. She asked that the mortgaged farms be sold at public sale to pay her the specified sums. The defendants answered, admitting the facts set forth in the complaint, except that they alleged that interest was due only from September 1, 1937. On May 26, 1942, apparently with the acquiescence of the plaintiff, the district court entered judgment as prayed in the complaint, except that interest was allowed only from September 1, 1937.

On September 23, 1942 the plaintiff filed a motion reciting that the two farms in question had been adjudicated to her at the public sale ordered by the district court on the aforesaid judgment, but that when she had endeavoured to register her deed at the registry, she had found farm A registered in the name of Valentín Polanco de Jesús, the said recordation showing that Polanco had acquired the property at a public sale by a deed executed June 26, 1942, and recorded on August 3, 1942. Alleging that Polanco was a purchaser *pendente lite,* the motion prayed that Polanco be notified that unless he paid that portion of the mortgage debt—$4,000 —and the costs and attorney's fees—$240— which were expressly allocated to farm A in the mortgage deed, the recordation of farm A in his name would be cancelled. Polanco filed a motion conceding that he was required to pay the principal sum of $4,000, but contending that, according to Act No. 92, Laws of Puerto Rico, 1938, interest on the mortgage beyond the legal rate could not be collected. Polanco has appealed

from the order of the lower court overruling his motion and granting the plaintiff's motion.

██ We consider first the motion of the appellee to dismiss on the grounds (a) that the order of the lower court is not appealable, and (b) that the mortgage debtors were not notified of the appeal. This court has decided both these points contrary to the contention of the appellee in *González v. Ortiz,* 45 P.R.R. 277. In addition to holding in that case that such an order was appealable, we pointed out at p. 279 that "once the property was awarded to the mortgagee, the mortgagor had no interest in the question of whether the record of ownership of said property standing in the registry in favor of a third person should be cancelled or not". Since they had no interest in the appeal herein, it was not necessary to notify the mortgage debtors thereof.

██ We pass to the merits of the appeal. Polanco contends that since Act No. 5, Laws of Puerto Rico, 1933, Special Session (p. 26), but more particularly since Act No. 92, Laws of Puerto Rico, 1938 (p. 202), no collection of interest beyond the legal rate therein specified may be collected. We assume, without deciding, that a stranger to the alleged usurious transaction in the situation of Polanco can raise this defense. And a specific provision in the contract for payment at the contract rate of interest after maturity and default, is considered as a part of the original contract, even after maturity, until final payment (*Cabrera* v. *Morales,* 57 P.R.R. 445).

██ We therefore address ourselves to the only substantial question raised by this appeal; namely, that the provision of Act No. 92 that "Any . . . person who, as money lender, demands or receives in or for any contract, agreement, or obligation, . . . money at a rate of interest exceeding nine (9) dollars a year on each hundred (100) dollars . . . shall be guilty of a misdemeanor . . ." operated to deprive the appellee of his right to collect interest at a rate higher than

314

9% on a contract which, as in the instant case, was executed prior to passage of the statute and which specifically provided for a higher rate of interest. This court has held that "Act No. 5, approved August 17, 1933, amended the law enacted on March 1, 1902, and reduced the interest rate at 9 or 8 per cent, according to the amount of the obligation. Although said act became effective immediately after its approval, it can not be applied to an obligation contracted prior to that time." (*Rivera* v. *Durán*, 59 P.R.R. 492, 5). To the same effect, *Toscano* v. *Pomales*, 60 P.R.R. 328; *Caraballo* v. *Registrar*, 48 P.R.R. 902. Although no mention is made in the *Durán* case of Act No. 92 of 1938, that Act had already been passed when the *Durán* case was decided, and nevertheless had no effect on the result thereof. As in the case of Act No. 5 of 1933, we find nothing in Act No. 92 warranting the conclusion that it was intended to apply to contracts entered into prior to passage of the Act. We therefore need not concern ourselves in this case with the problem of the validity of such action by the Legislature, as the latter has as yet made no attempt to pass such a statute.

■■ However, the district court did err in requiring the appellant to pay the entire mortgage debt to avoid cancellation of the recordation in his name of farm *A*. The original mortgage covered farms *A* and *B*. Although the mortgage deed is not in the record, the parties seem to be in agreement that it provided that farm *A* was to secure $4,000 of the $7,000 mortgage debt and $240 of the $520 provided in the deed for costs and attorney's fees. Since the appellant is claiming only farm *A*, he is entitled to retain the recordation thereof in his name by payment to the plaintiff (1) of $4,000, plus 12% interest from September 1, 1937, to May 26, 1942, the date of the judgment of the district court; (2) of $138.12, the amount paid by the plaintiff for accrued taxes and interest, plus 12% interest from December 16, 1941, the date

when that sum was paid, to May 26, 1942;[1] (3) of legal interest of 6% on $4,138.12 from the aforesaid judgment date of May 26, 1942, to the date of payment;[2] and (4) of $240 for costs and attorney's fees.

As modified in the manner herein indicated, the order of the district court will be affirmed.

Mr. Chief Justice Del Toro did not participate herein.

ON MOTION FOR REHEARING

July 21, 1943.

Mr. Justice Snyder delivered the opinion of the court.

We granted judgment herein of $240 for costs and attorney's fees, in view of the specific provision to that effect in the mortgage deed involved. However, the appellant on motion for reconsideration calls our attention to the fact that the lower court refused to grant attorney's fees herein, and that there was no appeal from that action of the district court. We shall therefore modify our previous judgment by eliminating the provision made therein for attorney's fees.

Mr. Chief Justice Del Toro did not participate herein.

---

(1)Section 348 of the Political Code reads in part as follows:

" . . . When the property is redeemed by a mortgage, the redemption money paid by him shall be added to his or her mortgage lien and may be recovered with the same rate of interest borne by the mortgage lien . . . "

(2)The rate of 12% on the mortgage debt provided by the contract and of the same rate on the purchase price pursuant to Section 348 of the Political Code drops to the legal reate of 6% when both are wiped out by merger in the judgment of May 26, 1942. (Ex Parte Franceschi, 53 P.R.R. 72; O'Brien v. Young, 95 N.Y. 428; United States Mortgage Co. v. Sperry, 138 U.S. 313, 352; Hiller v. Matheny, 256 Pac. 10 (Colo., 1927)).