No. 23100.

RALPH W. SCHWAB, EXECUTOR OF THE ESTATE OF RALPH R. SCHWAB, DECEASED v. NELLIE P. MARTIN, CHARLES BRAUN AND ERNEST BRAUN, KAROLINE F. MUNZ, WALTER M. HASLER AND ALBINA D. HASLER, EMMA BELLE STOOTSBERRY, BESSIE ENARSON, HELEN S. HILL AND JAMES J. HILL, AND WILLIAM BRAUN.

(441 P.2d 17)

Decided May 13, 1968.    Rehearing denied June 10, 1968.

Robert Bugdanowitz, Sam Berman, for plaintiff in error.

Justin D. Hannen, for defendants in error.

*In Department.*

Opinion by Mr. Justice Pringle.

Plaintiff in error is here by writ of error attacking an order of the District Court of the City and County of Denver which overruled his motion to discharge a receiver. R.C.P. Colo. 111 (a) (4).

Defendants in error are beneficiaries under deeds of trust, who bought in at separate foreclosure sales ten properties listed as assets in the estate of Ralph R. Schwab, deceased. They hold various certificates of purchase executed in their favor by the Public Trustee, and will hereafter be referred to collectively as purchasers. Plaintiff in error is executor of the estate of Ralph R. Schwab, deceased, and will hereafter be referred to as Schwab.

The purchasers filed a petition in the district court seeking appointment of a receiver under provisions contained in the various deeds of trust herein involved, each authorizing the appointment of a receiver without notice in the event of a default. The petition alleged that the properties were rental properties, and that the purchasers' interests therein were in danger of being greatly impaired. The court granted the petition, ex parte.

Schwab then filed a motion to intervene in the action, and a motion to discharge the receiver. After hearing, the court granted the motion to intervene and denied the motion to discharge the receiver. We affirm.

Schwab contends (1) that the purchasers' rights to appointment of a receiver under the deeds of trust were terminated by the foreclosure sales; (2) that the evi-

dence adduced at the hearing did not conform to the pleadings; (3) that certain findings were not supported by the evidence, and (4) that there was a misjoinder of parties and claims.

## I.

Schwab first argues that the trial court should have dismissed the petition and discharged the receiver because when the purchasers bid in the full amount of their mortgage debts at the foreclosure sales and surrendered their notes and trust deeds to the Public Trustee, the debts were extinguished and all of their rights under the deeds of trust terminated. He relies upon *Plains Loan, Realty & Inv. Co. v. Hood,* 76 Colo. 322, 230 P. 1008. That case, however, does not support his position. *Plains Loan* held that the right given the beneficiary under a trust deed to enter on the premises, take possession and apply rents and profits to the debt terminated when the foreclosure sale extinguished the debt. A receiver had indeed been appointed before the sale, but he was discharged by the court before the sale took place, and no appeal was taken from that order. The beneficiary nevertheless entered and took possession, retaining possession throughout the redemption period, when the trustor was entitled to possession. Under these circumstances, this Court held the beneficiary liable to the trustor for the rental value of the premises during the redemption period.

Under the fact situation disclosed here, the fact that the mortgage debt has been extinguished is not determinative of whether the right to appointment of a receiver under the deed of trust has also been terminated by the foreclosure sale. The trial court here found that the properties were in jeopardy because of failure to pay taxes and because other waste was being committed. The beneficiaries were entitled to protection against waste and against the loss of the properties by reason of failure to pay taxes. The provision of the deed of trust authorizing appointment of a receiver in such cases

552

is still operative, as a contract between the parties, even though the instrument itself has been surrendered to the Public Trustee.

██ Moreover, the interpretation of *Plains Loan, supra,* which Schwab urges on this Court has been foreclosed by the subsequent adoption of C.R.S. 1963, 118-9-13, specifically authorizing appointment of a receiver after sale where there is waste or danger of waste. See *Chemical Bank & Trust Co. v. National Mortgage & Discount Corp.,* 94 Colo. 63, 28 P.2d 812. We therefore hold that the purchasers, under the circumstances of this case, were entitled to appointment of a receiver after sale, both under the terms of their deeds of trust and under the statute.

II.

Schwab next argues that the trial court erred in permitting evidence of nonpayment of taxes and evidence that one property had been boarded up to be introduced at the hearing over his objections. He contends that this evidence was relevant only to the issue of waste, and that the purchasers in their petition had alleged only that their security was "in danger of being greatly impaired."

██ It is unnecessary to consider whether the purchasers should have moved to amend their pleadings to conform to the evidence, under R.C.P. Colo. 15(b), because we hold that the evidence offered was relevant to the issue of impairment of security. We do point out, however, that Rule 15(b) directs that such amendment be freely granted.

██ C.R.S. 1963, 118-9-13, puts an affirmative duty on the mortgagor in possession during the redemption period, among other things, to keep the premises in repair, use reasonable diligence to keep the premises yielding an adequate income and to pay current taxes before penalties accrue. Failure to perform these duties constitutes waste, under the statute. It should be obvious that where, as here, income property after foreclosure

is being subjected to action by the mortgagor which constitutes waste, as defined by our statute, then the value of the security might well be impaired by such action. The trial court did not err in admitting the evidence in question under the issues framed by the pleadings.

### III.

█ Schwab contends that there is no evidence to support the trial court's finding that Schwab had insufficient funds on hand to pay the 1966 taxes on the ten properties and to render the boarded-up property fit for human habitation, because there is nothing in the record to show the amount of the taxes that were due. While there is some merit to this contention, we find that there was sufficient other evidence in the record, and sufficient other findings made by the trial judge which are amply supported by the evidence, to support the court's conclusion that the purchasers' interests in these properties were in jeopardy.

Schwab himself testified that he had had $2,700 income from the subject properties in the bank for 60 days and that he had not paid the taxes; that the taxes were overdue at the time of the hearing, and that he intended to pay the taxes and penalties "at some future time." Schwab further testified that one of the properties had been boarded up as unsafe for human habitation and that he had taken no steps to have it repaired. There were 56 properties in the estate, including the ten involved here which had been foreclosed upon, and these properties were being managed as a unit.

█ There was sufficient basis here for the court's conclusion that the ten properties in question were not being adequately protected. In addition to the evidence given by Schwab, we point out that one of Schwab's attorneys made the following statements at the hearing:

"Now, there are 56 properties here. If this one is boarded up and we do not feel we have an equity in the property, naturally, we are not going to protect that property. If we feel we have equities in the other

properties we will protect those properties. We will protect the properties that are for the best interests of the estate, and if these ten properties are properties that we feel should not be protected, then we will not protect them, we will not pay taxes, and there is no obligation on him [Schwab] to do it."

As his counsel correctly stated, Schwab's primary obligation was as a fiduciary to the estate. As such, he was obligated to protect the interest of the estate as a whole, as against the preservation of any particular property. The trial court was correct in concluding that he was not in a position to give adequate protection to two potentially conflicting interests.

## IV.

█ █ Schwab's final contention is that there was a misjoinder of parties and claims here, because ten separate properties and eleven different purchasers are involved. He cites cases decided before adoption of the Rules of Civil Procedure, which held that causes of action cannot be united unless they affect all the parties in the same way. However, under R.C.P. Colo. 18 and 20(a), it is no longer necessary that each one of several parties have a like interest in all the claims of the other parties before all of them can join in a common suit. *Western Homes, Inc. v. District Court,* 133 Colo. 304, 296 P.2d 460. We believe it follows from this that diverse parties can join in requesting a common receiver, if they feel their own interests can best be served thereby.

█ This does not mean, however, that the receiver here is entitled to administer these ten properties as a unit. In fact, he may not do so. Since the order appointing the receiver does not specifically direct him to make separate accounting for the receipts and disbursements attributable to each of the ten properties, we expressly modify that order to provide that the receiver pay sums on behalf of any particular property only out of funds which are derived from that property and make

separate accounting of the receipts and disbursements attributable to each of the ten properties.

The order of the district court denying the motion to discharge the receiver is affirmed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE KELLEY concur.